```
UNITED STATES DISTRICT COURT
+SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,          :

                Plaintiff,         :    03 Civ. 0382 (HBP)

     -against-                     :    OPINION
                                        AND ORDER
$188,911.00 IN UNITED STATES       :
CURRENCY,
                                   :
                Defendant-in-rem.

----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

By notice of motion dated February 25, 2005, plaintiff moves, pursuant to Fed.R.Civ.P. 37 and 55, for a default judgment based on Claimants' failure to comply with several discovery Orders. For the reasons set forth below, plaintiff's motion is granted and the Clerk of the Court is directed to enter judgment in plaintiff's favor.

II. Facts

On or about January 16, 2003, plaintiff commenced this action seeking the forfeiture of the defendant-in-rem pursuant to 21 U.S.C. § 881(a)(6), which permits the United States of America to seize

> [a]ll moneys, negotiable instruments, securities, or
> other things of value furnished or intended to be

furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

The relevant facts are as follows. The Verified Complaint alleges that on or about June 21, 2002, Jason Cordova-Diaz's car was stopped by officers of the New York City Police Department. Cordova-Diaz initially gave the officers a false name and was unable to produce any identification. The officers searched Cordova-Diaz and found approximately $911 on his person. Cordova-Diaz told the officers that he had identification at his residence, and the officers followed him to his residence in the Bronx (Complaint ¶ 4).

After entering Cordova-Diaz's residence, the officers saw in plain view what appeared to be a marijuana cigarette and two rounds of ammunition. Cordova-Diaz then admitted his real name and told the officers that there was an outstanding warrant for his arrest. There was in fact an outstanding 1998 bench warrant from New York State charging Cordova-Diaz with criminal sale of a controlled substance in the third degree. Cordova-Diaz was then arrested, and the officers subsequently obtained a search warrant for the residence (Complaint ¶ 5).

Officers searched Cordova-Diaz's residence on or about June 22, 2002. During the search, the officers found narcotics paraphernalia, including three electronic scales containing

residue of a substance later tested positive for cocaine; several jars labeled "lactose" and "lidocaine," both of which are commonly used as cutting agents for narcotics; a glass pestle; and several small plastic bags and rubber bands (Complaint ¶ 6).

In addition, the officers also found $188,000 of the defendant-in-rem money at issue in this case (Complaint ¶ 7). Later testing detected high concentrations of cocaine and marijuana on the defendant-in-rem money (Complaint ¶ 8).

On March 5, 2003, Raymond Cordova served a Verified Notice of Claim on plaintiff on behalf of himself and his wife, Rosa Cordova (together "Claimants"), alleging that they were the lawful owners of the defendant-in-rem money, that the money constituted their life savings, and that the money was seized from their home (Notice of Claim dated Mar. 5, 2003 ("Cordova Notice of Claim"), Docket Item 3, ¶ 2). Raymond Cordova is Jason Cordova-Diaz's father (Cordova Notice of Claim ¶ 3). Claimants subsequently filed their Verified Answer on April 4, 2003.

On April 11, 2003, the Honorable Kimba M. Wood, United States District Judge, held a pre-trial conference and issued a Scheduling Order. In addition to setting other discovery deadlines, the Order stated that all discovery was to be completed by July 11, 2003 (Scheduling Order, Docket Item 5).

On April 28, 2003, the parties consented to my exercising plenary jurisdiction in this matter (Docket Item 6).

Although Claimants served initial disclosures in accordance with the April 11, 2003 Scheduling Order (albeit nine days late), they failed to respond to any of plaintiff's discovery requests (Declaration of Assistant United States Attorney Virginia Chavez in Support of Default Judgment, dated Nov. 23, 2004 ("Chavez Decl."), ¶¶ 14-15). Plaintiff served its request for documents and interrogatories on May 7, 2003, but Claimants never responded to the request. Claimants' then-counsel informed plaintiff that he did not know when, if ever, the discovery materials would be provided (Chavez Decl. ¶ 15).

The parties had also agreed that the depositions of Claimants would take place on June 3, 2003 (Chavez Decl. ¶ 13). However, when plaintiff called to confirm the depositions, Claimants' then-counsel informed plaintiff that Claimants were in Puerto Rico and would not appear. The depositions were then rescheduled for July 1, 2003 (Chavez Decl. ¶ 17). Plaintiff called to confirm the rescheduled depositions on June 30, 2003, but was again told that Claimants would not appear. Plaintiff then suggested that in light of the July 11, 2003 discovery deadline in the Scheduling Order, Claimants should request a new scheduling order from the Court (Chavez Decl. ¶ 18). Claimants did not make such a request.

On July 11, 2003, Claimants' counsel, Robert Osuna, Esq., sent a letter to plaintiff's counsel advising that Claimant

Rosa Cordova had formally discharged him and that he was no longer representing Claimants.  Following a status conference, I issued an Order on September 24, 2003, ordering Osuna to serve and file a motion to be relieved as counsel.  Osuna filed his notice of motion, and I granted it on December 22, 2003.

My September 24, 2003 Order also directed Claimants to respond to plaintiff's requests for production of documents and interrogatories by October 7, 2003, and to contact plaintiff by October 10, 2003 to schedule their depositions.  The Order expressly warned Claimants that failure to comply would result in the imposition of sanctions which might include the entry of a default judgment.

On February 19, 2004, I held a status conference.  The conference was attended by plaintiff's counsel only.  Neither Claimant appeared nor contacted my chambers concerning the conference despite the fact that written notice was mailed to them and not returned as undeliverable.  During the course of the conference, I was advised by plaintiff's counsel that Claimants did not comply with my September 24, 2003 Order, and I issued an Order the same day giving the Claimants one final opportunity to comply with their discovery obligations (Docket Item 10).  I directed Claimants to contact plaintiff by phone no later than March 19, 2004.  My Order further provided that

> [i]f claimants do not comply with their discovery
> obligations by March 19, 2004, plaintiff is granted

> leave to file a motion for a default judgment as a
> sanction pursuant to Fed.R.Civ.P. 37(b). If no justi-
> fication is shown for claimants' failure to comply with
> the discovery orders in this matter, the motion for a
> default judgment will be granted.

A copy of my February 19, 2004 Order was mailed to Claimants and has not been returned as undeliverable. Claimants did not comply with the Order.

On or about August 29, 2005, Claimants called my chambers and advised my Deputy Clerk that they have not complied with plaintiff's discovery requests because they have been preoccupied with unspecified health issues. My Deputy Clerk told Claimants to set forth their reasons for not complying with my Orders in writing and to submit their explanation to chambers. To date, I have not received any such submission.

Thus, to date Claimants have not responded to plaintiff's discovery requests, have not (apart from a single telephone call) responded to either discovery Order, and have not responded to the instant motion.

III. Analysis

As noted by the Honorable David N. Hurd, then Magistrate Judge, now United States District Judge, in Fritter v. Dafina, Inc., 176 F.R.D. 60, 63 (N.D.N.Y. 1997):

> The Court may render a default judgment against a party
> who has failed to fully comply with a discovery order
> of the court. Fed.R.Civ.P. 37(b)(2)(C). Such a sanc-

6

tion is an extreme measure appropriate only in extreme circumstances. See Bambu Sales Inc. v. Ozak Trading Inc., 58 F.3d 849, 853 (2d Cir. 1995); Woodstock Ventures LC v. Perry, 164 F.R.D. 321, 322 (N.D.N.Y. 1996) (citing Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 734 (2d Cir. 1987)). Consequently, the Second Circuit limits default judgments to circumstances "involving willfulness, bad faith, or any fault on the part of the disobedient party." Altschuler v. Samsonite Corp., 109 F.R.D. 353, 356 (E.D.N.Y. 1986) (citing Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095-96, 2 L.Ed.2d 1255 (1958)); see Jones, 836 F.2d at 734. In addition, though, the Second Circuit has held default judgment appropriate where there has been a total dereliction of professional responsibility, evincing circumstances of gross negligence. Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1065-66 (2d Cir. 1979).

See also Van Pelt v. Helmsley Park Lane Hotel, Inc., 02 Civ. 9451 (VM), 2003 WL 22253183 at *1 (S.D.N.Y. Sept. 30, 2003); Nat'l Communications Ass'n v. Am. Tel. & Tel. Co., 92 Civ. 1735 (LAP), 1998 WL 118174 at *3 (S.D.N.Y. Mar. 16, 1998); Sullivan v. City of New York, 94 Civ. 1643 (FB), 1997 WL 642321 at *2 (E.D.N.Y. Sept. 3, 1997); Jeanette Coquette Co. v. Hartford Fire Ins. Co., 93 Civ. 4417 (DAB), 1997 WL 527874 at *1-*2 (S.D.N.Y. Aug. 22, 1997); Edwards v. Am. Airlines, Inc., 95 Civ. 5356 (SAS), 1996 WL 432472 at *2-*3 (S.D.N.Y. Aug. 1, 1996); Starbrite Waterproofing Co. v. AIM Constr. & Contracting Corp., 164 F.R.D. 378, 381-82 (S.D.N.Y. 1996).

Courts have considered five factors in assessing whether a case dispositive is appropriate as a sanction for a party's failure to comply with a discovery order: "the duration

of the plaintiff's failures, whether plaintiff has received notice of the potential sanctions, the prejudice to the defendant arising from the plaintiff's actions, due process considerations, and the efficacy of lesser sanctions."  2 Michael C. Silberberg & Edward M. Spiro, <u>Civil Practice in the Southern District of New York</u> § 26.11 at 26-35 to 26-36 (2d ed. 2004); <u>see</u> <u>also</u> <u>Spencer v. Doe</u>, 139 F.3d 107, 113 (2d Cir. 1998) (articulating the fourth factor as requiring a "balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard"); <u>see</u> generally <u>Bambu Sales, Inc. v. Ozak Trading, Inc.</u>, 58 F.3d 849, 852-53 (2d Cir. 1995).

All of the factors in this case weigh in favor of the imposition of the ultimate sanction of a default judgment. First, Claimants have violated both my September 24, 2003 and February 19, 2004 Orders, the first of which was issued almost two years ago.  Second, both Orders provided clear and unequivocal warning that a default judgment was a possible sanction. Since Claimants dismissed their counsel and my Orders were sent directly to them, Claimants themselves are responsible for the default.  Third, plaintiff has suffered substantial prejudice because Claimants have not complied with plaintiff's discovery requests.  And fourth, despite the opportunity to do so, Claimants have failed to respond to the pending motion.

Finally, it appears that no lesser sanction will be effective. Claimants were given multiple warnings and multiple opportunities to comply with my Orders, yet failed to do so. Although Claimants have recently contacted my chambers by telephone, they were specifically advised to state their reasons for not complying with my Orders in writing and they have not done that either. Since Claimants have repeatedly, and apparently, deliberately, refused to comply with the Court's Orders despite repeated opportunities to do so, the ultimate sanction of default judgment is now appropriate. See Baba v. Japan Travel Bureau Int'l, Inc., 111 F.3d 2, 5 (2d Cir. 1997) (plaintiff's "stubborn failure to comply with the court's discovery orders justified the district court's decision to [enter a case dispositive order] pursuant to Fed.R.Civ.P. 37(b)"); Bambu Sales, Inc. v. Ozak Trading, Inc., supra, 58 F.3d at 853 ("Although entry of a [case dispositive order] is an extreme measure, discovery orders are meant to be followed. 'A party who flouts such orders does so at his peril.'"), quoting Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988).

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for a default judgment is granted in all respects. The Clerk of the

Court is directed to enter judgment forfeiting the defendant-in-rem currency to plaintiff.

Dated: New York, New York
September 16, 2005

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Virginia Chavez, Esq.
Assistant United States Attorney
United States Attorney's Office
One Saint Andrew's Plaza
New York, New York 10007

Mr. and Mrs. Ramon Cordova
2191 Bolton Street
Apartment 1-C
Bronx, New York 10462